# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESS'NN A. AUBERT, | 1:07-cv-01629-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT ELIJAHS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO EXHAUST, BE DENIED |
| v. | |
| KEVIN ELIJAH, et al., | |
| Defendants. | (Doc. 23.) |
| | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

## I. BACKGROUND

Plaintiff Ess'nn A. Aubert ("Plaintiff") is a former state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the original complaint commencing this action on November 8, 2007. (Doc. 1.) This action now proceeds on Plaintiff's original complaint against defendants Correctional Officer ("C/O") Kevin Elijah and C/O Mario Garcia for use of excessive force against Plaintiff in violation of the Eighth Amendment.[1] On December 18, 2009, defendant C/O Kevin Elijah ("Defendant") filed a motion for judgment on the pleadings under Rule 12(c), or in the alternative, to dismiss this action under Rule 12(b) for failure to exhaust administrative remedies.[2] (Doc. 23.) On February 10, 2010, Plaintiff filed an opposition to the

---

[1] All other claims and defendants were dismissed from this action by the Court on July 31, 2009, based on Plaintiff's failure to state a claim. (Doc. 17.)

[2] Defendant Mario Garcia has not been served with process in this action. The United States Marshal filed a Return of Service unexecuted as to defendant Mario Garcia on October 7, 2009. (Doc. 18.) Defendant Mario Garcia has not joined in the present motion to dismiss or otherwise appeared in this action.

1

motion. (Doc. 26.) On February 17, 2010, Defendant filed a reply to Plaintiff's opposition. (Doc. 28.) Defendant's motion is now before the Court.

## II.  PLAINTIFF'S CLAIMS AND ALLEGATIONS[3]

At the time the complaint was filed, Plaintiff was a state prisoner at Kern Valley State Prison ("KVSP"), in Delano, California, where the acts he complains of allegedly occurred. Plaintiff's complaint arises from a routine body search conducted by C/O M. Garcia on January 18, 2007 as Plaintiff returned from the exercise yard to his assigned housing at KVSP. After searching Plaintiff, C/O Garcia confiscated Plaintiff's state-issued boxer shorts. When Plaintiff requested justification, C/O Garcia replied, "I have the power to." Plaintiff and C/O Garcia then engaged in a brief verbal interchange, ending with several guards, including C/O Garcia and C/O Elijah, isolating Plaintiff in the rotunda in front of the B section day room. There, C/O Garcia verbally attacked Plaintiff, calling Plaintiff's mother a "bitch" and a "whore," and crudely describing an act of sodomy that he would perform on her. After Plaintiff responded that he loved his mother, who would be proud of him for maintaining his self-control despite the attempt to provoke him, C/O Elijah ordered C/O Garcia to "just kick his ass and do what you want with him so I can kick him out of my building with his smart ass mouth." Plaintiff requested a Lieutenant be called, protesting that C/O Elijah's order endangered his life. C/O Elijah then began to choke Plaintiff, initiating a beating by C/O Elijah, C/O Garcia and numerous other unnamed correctional officers. Plaintiff alleges that the officers struck him with closed fists on his face, head and back, pulled his hair out, violently twisted his fingers and kicked him several times. Plaintiff brings claims against C/O Elijah and C/O Garcia for use of excessive physical force against Plaintiff, in violation of the Eighth Amendment. Plaintiff requests monetary damages as relief.

## III.  RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[A]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." Defendant brings a motion for judgment on the pleadings under Rule 12(c), based on Plaintiff's

---

[3] This summary includes Plaintiff's claims in the original complaint found cognizable by the Court on May 7, 2009, and Plaintiff's related allegations, upon which this case now proceeds. (Doc. 10.)

2

failure to exhaust administrative remedies. However, the failure to exhaust remedies is treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion to dismiss, not a Rule 12(c) motion. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003). Therefore, the Court treats Defendant's motion as an unenumerated Rule 12(b) motion to dismiss.

**IV.    UNENUMERATED RULE 12(b) MOTION TO DISMISS FOR FAILURE TO EXHAUST**

Defendant argues that Plaintiff's allegations against him should be dismissed, because Plaintiff failed to exhaust his administrative remedies.

**A.    Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83-84.

The PLRA requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. 42 U.S.C. § 1997e(a). The Booth court held that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. Booth, 532 U.S. at 732. "The meaning of the phrase 'administrative remedies ... available' is the crux of the case." Id. at 731. In discussing the meaning of the term "remedy," the court noted that "depending on where one looks, 'remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or *the process itself*, the procedural avenue leading to some relief." Id. at 738. (emphasis added.) Thus,

3

the court determined that the language of the statute, which requires that the "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained, refers to "exhaustion" of the *process available*. Id. at 738-739.  (emphasis added.)   It follows, then, that if an inmate exhausts the process that is made available to him, he has satisfied the requirement of the statute.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt, 315 F.3d at 1119.  *"*[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005).  "[A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of relief already granted as a result of that process."  Id. at 936-37.  Therefore, if some remedy is available, Plaintiff has not exhausted his remedies.

The statutory language does not require exhaustion when *no* pertinent relief can be obtained through the internal process.  Id. at 935.  Once an agency has granted some relief and explained no other relief is available, the administrative process has been exhausted.  Id. at 936.  Therefore, if there is no possibility of any further relief, or if Plaintiff received all "available" remedies at an intermediate level, then the remedies are exhausted.

The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  Id.

**B.     CDCR's Administrative Grievance System**

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints.

4

Cal. Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d. 1198, 1199-1201 (9th Cir. 2002).

### C. Defendant's Position

Defendant argues that Plaintiff failed to exhaust his remedies, because he failed to appeal his grievance concerning excessive force by Defendant to all four levels of the prison appeal process. Defendant submits evidence that as of October 15, 2009, Plaintiff had submitted four appeals to a formal level of review during the time he was incarcerated at KVSP. (Declaration of Teri Billings, Doc. 23-2 ("Billings Decl."), ¶3 and Exh. A, Doc. 23-3.) Only the first appeal, log number KVSP-O-07-00659, is at issue in this case, because it is the only one that arose out of the January 18, 2007 excessive force incident alleged against defendants C/O Elijah and C/O Garcia in Plaintiff's present complaint.[4] (Id. ¶4(A) and Exh. B, Doc. 23-4.)

*Appeal number KVSP-O-07-00659*

Appeal number KVSP-O-07-00659 was submitted to the Second Formal Level of the appeals process by Plaintiff on March 15, 2007. (Id.) In the appeal, Plaintiff complained that on

---

[4] The second appeal, log number KVSP-O-07-02212, was submitted to the Second Level of review by Plaintiff on October 17, 2007 and concerned Plaintiff's punishment resulting from the January 18, 2007 incident. (Billings Decl. ¶4(B) and Exhs. A & C.) Plaintiff requested that his Rules Violation Report be dismissed and that he be released from the SHU, because the chain of command was not followed regarding signatures on the forms. Id.

The third appeal, log number KVSP-O-09-01378, was submitted to the Second Level of review by Plaintiff on August 19, 2009 and concerned an excessive force incident by correctional officers occurring on August 4, 2009. (Id. ¶4(C) and Exhs. A & E.)

The fourth appeal, log number KVSP-O-09-01462, was submitted to the Second Level of review by Plaintiff on September 14, 2009 and concerned the August 4, 2009 excessive force incident. (Id. ¶4(D) and Exhs. A & D.)

5

January 18, 2007, his white boxer shorts were confiscated during an inmate search, after which C/O Garcia insulted Plaintiff's mother, C/O Elijah encouraged C/O Garcia to "kick his ass," and Elijah and Garcia attacked Plaintiff, kicking him, twisting his fingers and hitting him in the face, head, and back. (Id., Exh. B.) In the appeal, Plaintiff requested an investigation into the "abuse, assault and battery." (Id.)

Plaintiff and witnesses were interviewed, and the appeal was granted in part at the Second Level on June 28, 2007. (Id.) Plaintiff was notified that an inquiry into his allegations had been conducted, but that staff personnel matters were confidential, and results of the investigation would not be shared with him. (Id.) At the bottom of the appeal form, Plaintiff was given the option to appeal further. (Id.) There is no evidence that he submitted an appeal to the Director's Level for review. (Billings Decl. ¶3 and Exh A.)

Defendant also notes that in his complaint, Plaintiff claims that on October 15, 2007, he filed another 602 appeal arising from the January 18, 2007 excessive force incident, requesting money damages, and the appeal was rejected because a decision had already been rendered on the issue. (Cmp. at II(C).) Defendant maintains that instead of filing a new appeal, Plaintiff should have proceeded to the third level of review on the existing appeal. Defendant contends that Plaintiff was informed of the proper procedures by Chief Deputy Warden C. J. Chrones in the Second Level response which clearly stated that Plaintiff could pursue further relief via the inmate appeals process. (Exh. B to Billings Decl.)

**Plaintiff's Opposition**[5]

The Court looks to Plaintiff's opposition and verified complaint.[6]

---

[5] Defendant argues that Plaintiff's opposition to the motion to dismiss should be disregarded by the Court because Plaintiff failed, without good cause, to file a timely opposition pursuant to Local Rule 230(l). The Court recognizes that Plaintiff's opposition was filed late. However, both Plaintiff and Defendant shall be heard by the Court on this dispositive matter. "There is a 'well established' principle that '[d]istrict courts have inherent power to control their dockets.'" United States v. W. R. Grace, 526 F.3d 499, 509 (9th Cir. 2008) (quoting Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc., 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original) (internal quotation marks omitted).

[6] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the original complaint under penalty of perjury. (Doc. 1.) Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaint. Plaintiff's opposition is not verified and therefore does not constitute admissible evidence. (Doc. 26.)

Plaintiff does not deny that he failed to complete all four levels of the appeals process at KVSP.  (Cmp. at II(C).)  Instead, Plaintiff argues that similar to Brown in <u>Brown v. Valoff</u>, his remedies were exhausted when his appeal was "partially granted" on June 28, 2007 at the Second Formal Level of the appeals process.  <u>Brown</u>, 422 F.3d 926.  Plaintiff argues that his case is similar to <u>Brown</u> because (1) he filed a grievance regarding staff abuse; (2) he received a response informing him that his appeal was "partially granted" and the matter had been referred for investigation; (3) he did not pursue his grievance further before filing suit; and (4) the investigation was over before he filed suit.

Plaintiff asserts that he made another attempt to exhaust his remedies with regard to the excessive force incident when he filed a new appeal on October 15, 2007, requesting money damages, but the appeal was rejected as duplicative of the first appeal, and his attempt came to a halt.  (Cmp. at II(C).)

Plaintiff contends that prison officials were given fair notice of his complaints, and he pursued all of the remedies that were available to him.

### D.     **Defendant's Reply**

In the reply, Defendant re-asserts his argument that Plaintiff failed to exhaust his remedies because he did not pursue his appeal to the Director's Level.  Defendant also asserts that Plaintiff admits in the complaint that he did not appeal to the Director's Level.

With regard to Plaintiff's argument that his case is similar to <u>Brown</u>, Defendant argues that Plaintiff's case is distinguishable because Plaintiff, unlike Brown, was notified that additional relief was available to him.  The Second Level response received by Plaintiff stated, in part:

> "Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.  If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review.  Once a decision has been rendered at the Director's Level of Review your administrative remedies will be considered exhausted."  (Page 1 of Exh. B to Billings Decl.)

With regard to Plaintiff's argument that he attempted to exhaust remedies at the prison by filing a new appeal on October 15, 2007, Defendant asserts that the new appeal was untimely and

7

was rejected because of Plaintiff's own failure to abide by the regulations as required. Defendant maintains that instead of filing a new appeal, Plaintiff should have submitted the first appeal to the Director's Level.

### F.     Discussion

The Court rejects Defendant's argument that a Director's Level response is necessary to satisfy the exhaustion requirement and the mere absence of a Director's Level response entitles him to dismissal. Brown, 422 F.3d at 935-36 ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available."). There is no dispute that Plaintiff failed to appeal his grievance concerning his allegations in the complaint to the final Director's Level. The question here is whether Defendant has demonstrated that "some" pertinent relief remained "available" to Plaintiff in the appeals process, either at the unexhausted level, or through awaiting results of relief already granted. Id. at 936-937.

Plaintiff's argument that his case is similar to Brown has merit. Like Brown, (1) Plaintiff submitted a grievance on form 602, regarding an alleged incident of prison staff misconduct; (2) Plaintiff's appeal was processed as a "Staff Complaint;" (3) Plaintiff was informed that his appeal was "partially granted" at the Second Level, that an investigation was underway, and the results of the investigation were confidential and would not be released to Plaintiff; and (4) Plaintiff proceeded to file suit in federal court without appealing to the Director's Level of review. The court in Brown decided that Brown had exhausted his administrative remedies because there was no possibility of further relief through the appeal process or grievance procedure at the prison. Id. at 937-40. The court held that because the Staff Complaint investigation had been opened and was confidential, no further relief was "available" through the appeals process. Id. at 939.

Defendant argues that Plaintiff's case is distinguishable because Plaintiff, unlike Brown, was notified that additional relief was available to him. Indeed, whereas Brown was *not* informed that any further review was available, Plaintiff *was* informed in the Second Level response that "the availability of further relief via the inmate appeals process" was not limited by

his allegations of staff misconduct, and that he could appeal the decision to the Director's Level of review. (Id. at 940; Page 1 of Exh. B to Billings Decl.) However, the Brown court's decision rested on the determination that Brown *had* no further remedies available, not that he was *not informed* of further remedies. The fact that Brown was not informed was discussed by the court because it reflected the nature of Brown's grievance, for which no further remedies were available. In the present case, the fact that Plaintiff *was* notified of further remedies does not necessarily indicate that further remedies were available to Plaintiff and does not distinguish Plaintiff's case from Brown's.

Defendant argues that because Plaintiff was informed in the Second Level response about the Director's Level, Plaintiff was required to complete the Director's Level to exhaust his remedies. However, as discussed above, a prisoner need not press on to exhaust further levels of review if he has received all "available" remedies at an intermediate level. The Second Level response also contained this notification which was more specific to Plaintiff's grievance:

> "**FINDINGS FOR AN APPEAL INQUIRY**: Your appeal is PARTIALLY GRANTED at the Second level, as an inquiry into your allegation has been conducted. ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process." Id.

The Court finds it reasonable that an inmate in Plaintiff's position, reading the **FINDINGS** above, would believe that because (1) the inquiry had been conducted, (2) all staff personnel matters are confidential, (3) the results of the inquiry/investigation will not be shared with the inmate, and (4) it is beyond the scope of the process to request administrative action against staff, no pertinent relief remained available, either at the Director's Level or through awaiting results of the Second Level inquiry. Even though Plaintiff was also informed that "[A]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process," it reasonably appears from the **FINDINGS** that no further relief was available to Plaintiff through the process. Therefore, the fact that Plaintiff was notified about the Director's Level does not support Defendant's argument that further remedies *were* available to Plaintiff, or that Plaintiff should have believed further remedies were available.

Defendant has not discussed what further relief was available to Plaintiff. Indeed, Plaintiff did not find further relief available when he attempted to request money damages before filing suit. Plaintiff filed a new 602 appeal on October 15, 2007, regarding the January 18, 2005 excessive force incident, requesting money damages. (Exh. A to Opp'n, Doc. 27.) The appeal was rejected as a duplicate of the Staff Complaint in which he requested the investigation. Id. The rejection letter informed Plaintiff that "[T]his screening decision may not be appealed," and cautioned him that "[F]ailure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed." Id. It is not unreasonable that Plaintiff would believe he was precluded from appealing further before filing suit in federal court.

## IV.    CONCLUSION AND RECOMMENDATION

Defendant has not met his burden of demonstrating that Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a), and Plaintiff has submitted evidence of appeals that satisfy the exhaustion requirement. The Court finds that Plaintiff exhausted all of the administrative remedies made available to him before filing suit.

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendant's motion to dismiss, filed December 18, 2009, be DENIED.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 24, 2010**            /s/ Gary S. Austin
                                     UNITED STATES MAGISTRATE JUDGE