IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESS'N A. AUBERT,<br><br>        Plaintiff,<br><br>   v.<br><br>KEVIN ELIJAH, et al.,<br><br>        Defendants. | NO. 1:07-cv-01629 LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS RE DEFENDANT ELIJAH'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 42)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

     Plaintiff is a state prisoner proceeding pro se in this civil rights action. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Pending before the Court is Defendant Elijah's motion for summary judgment. Plaintiff has opposed the motion.

**I.    Procedural History**

     This action proceeds on the complaint filed by Plaintiff on November 8, 2007. Plaintiff sets forth claims of cruel and unusual punishment in violation of the Eighth Amendment. The events at issue occurred at Kern Valley State Prison. Plaintiff names as defendants the following individuals employed by the California Department of Corrections and Rehabilitation at Kern Valley State Prison: Warden Hedgpeth; Correctional Officer (C/O) Kevin Elijah; C/O Mario Garcia.

On May 7, 2009, an order was entered, advising Plaintiff that the complaint stated an Eighth Amendment claim against Defendants Garcia and Elijah for excessive force. Plaintiff failed to state a claim against Defendant Hedgpeth. Plaintiff was provided the opportunity to file an amended complaint to cure the deficiencies identified as to Defendant Hedgpeth. On May 14, 2009, Plaintiff filed a notice, advising the Court of his willingness to proceed against Defendants Elijah and Garcia. Accordingly, on June 1, 2009, findings and recommendations were entered, recommending that this action proceed against Defendants Elijah and Garcia on Plaintiff's excessive force claim, and that Defendant Hedgpeth be dismissed. On July 31, 2009, an order was entered by the District Court, adopting the findings and recommendations and dismissing Defendant Hedgpeth.

The complaint was served, and on October 16, 2009, Defendant Elijah filed an answer. On October 29, 2010, Defendant Elijah filed a motion for summary judgment which is now before the Court. On November 29, 2010, Plaintiff filed an opposition to the motion. Defendant Elijah replied on December 6, 2010. On October 7, 2009, service was returned unexecuted as to Defendant Garcia. Defendant Garcia was re-served , and on December 21, 2010, he filed an answer.

**II.     Summary of Complaint**

Plaintiff's complaint arises from a routine body search conducted as Plaintiff returned from the exercise unit to his assigned housing at Kern Valley State Prison on January 18, 2007. After searching Plaintiff, Defendant Garcia confiscated Plaintiff's state-issued boxer shorts. When Plaintiff requested justification, Garcia replied, "I have the power to." Plaintiff and Garcia then engaged in a brief verbal interchange, ending with several guards, including Defendants Garcia and Elijah, isolating Plaintiff in the rotunda in front of the B section day room. There, Garcia verbally attacked Plaintiff, calling Plaintiff's mother a "bitch" and a "whore." After Plaintiff responded that he loved his mother, who would be proud of him for maintaining his self-control despite the attempt to provoke him, Elijah ordered Garcia to "just kick his ass and do

2

what you want with him so I can kick him out of my building with his smart ass mouth." Plaintiff asked that a Lieutenant be called, protesting that Elijah's order endangered his life. Elijah then began to choke Plaintiff, initiating a beating by Elijah, Garcia and other unnamed correctional officers.

### III. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**IV.     Excessive Force**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834.

1    Whenever prison officials are accused of using excessive physical force in violation of
2    the Eighth Amendment prohibition against cruel and unusual punishment, the core judicial
3    inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or
4    maliciously and sadistically to cause harm. Hudson v.McMillian, 503 U.S. 1, 6-7 (1992) Force
5    does not amount to a constitutional violation if it is applied in a good faith effort to restore
6    discipline and order and not "maliciously and sadistically for the very purpose of causing harm."
7    Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.
8    2002). Under the Eighth Amendment, the court looks for malicious and sadistic force, not merely
9    objectively unreasonable force. Clement v. Gomez, 298 F.3d at 903.

10   In determining whether the constitutional line has been crossed, the Court may consider
11   such factors as the need for the application of force, the relationship between the need and the
12   amount of force that was used, the extent of injury inflicted, the threat reasonably perceived by
13   the responsible officials and any efforts made to temper the severity of a forceful response.
14   Hudson, 503 U.S. at 7.  Prison administrators should be accorded wide-ranging deference in the
15   adoption and execution of policies and practices that in their judgment are needed to preserve
16   internal order and discipline and to maintain institutional security.  Whitley, 475 U.S. at 322.

17   **V.    Defendant's Evidence**

18   Defendant supports his motion with his own declaration and the declaration of A. Bogle,
19   a Medical Technical Assistant (MTA) employed by the CDCR at Kern Valley State Prison.
20   Regarding the events at issue, Elijah declares the following.

21   > On January 18, 2007 at approximately 1:30 p.m., I was working as
22   > a floor officer during recreation yard recall.  Inmates from the "B"
23   > facility were undergoing routine searches as they came in from the
24   > yard prior to returning to their cells.  I heard Officer M. Garcia
25   > advises inmate ESS'NN AUBERT, V-77688, that his state-issued
26   > boxer shorts were being confiscated because they had been altered.
27   > Cal. Code Regs., Title 15, § 3032(a) provides that "[i]nmates shall
28   > not alter . . . state-issued clothing or linen in any manner without
     > specific authority to do so."  When an officer confiscates
     > unauthorized but legal items, the inmate is given a receipt and he is
     > allowed to send the items home or donate them.

5

AUBERT did not argue that his shorts had been altered. Instead, AUBERT became verbally disrespectful and argumentative, stating to Garcia, words to the effect of: "Why you fucking with me? There's nothing wrong with these shorts. I've been having them." Officer Garcia informed AUBERT that he would receive a receipt for the altered boxers. AUBERT stated, in a loud and hostile voice in front of several inmates, "Fuck that!" and told Garcia he could not take the boxers.

Cal. Code Regs., Title 15 § 3004(b) provides that "[i]nmates ... will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institution or to incite or provoke violence." Officer Garcia attempted to deescalate the situation by asking AUBERT to step out into the rotunda. AUBERT complied, and I went along to provide backup for Officer Garcia, since AUBERT was becoming increasingly hostile.

AUBERT remained unreceptive to Officer Garcia's attempts to verbally counsel him regarding his behavior. At this time, I explained to AUBERT that due to his disrespectful attitude and agitated behavior, I would be moving him to another building. AUBERT responded in a hostile tone, "Fuck you, move me out." I instructed AUBERT to turn around so that he could be placed in restraints, but he did not comply. I gave a second verbal order to AUBERT to turn around, which he also failed to obey. As I was reaching for AUBERT's right hand with my left hand, AUBERT suddenly began swinging his fists, punching me in the left eye. I reflexively defended myself against the sudden attack by striking AUBERT in the facial area. AUBERT also attempted to grab my weapons and my gas mask. My weapons were an expandable baton and pepper spray. I did not use any weapons on AUBERT.

I also witnessed AUBERT striking out at Officer Garcia. As I struggled with AUBERT, Officer Garcia was able to force AUBERT to the ground in a prone position where he was handcuffed. I do not recall seeing any other officers in the rotunda during this incident. Officer Garcia and I helped AUBERT to his feet and escorted him to the front of the building where Officers D. Williams and J. Spurgeon took over the escort.

I sustained a black eye and injuries to my right hand and forearm as a result of AUBERT'S attack.

At no time on January 18, 2007 did I hear Officer Garcia insult AUBERT or make any derogatory remarks about AUBERT'S mother. At no time did I threaten AUBERT with bodily harm, nor did I order Officer Garcia "kick [AUBERT'S] ass." At no time did I hear AUBERT request the presence of a lieutenant or state that he felt his life was in danger.

6

> On January 18, 2007, I used no more force than necessary and reasonable to subdue AUBERT'S attack and effect custody. When my verbal orders were ignored, and after AUBERT began swinging his fists, I resorted to physical force to defend myself and restore discipline. I acted in a good faith to restore order, and not for the purpose of causing AUBERT harm. At no time did I use force maliciously or sadistically.

(Elijah Decl. ¶¶ 3-10.)   The declaration of A. Bogle, the MTA who saw Plaintiff, indicates that Plaintiff had "superficial injuries to his face and shoulder, including abrasions and bruising. The back of AUBERT'S neck appeared bruised, and there were abrasions on the back of his left elbow, but no bleeding, cuts, or swelling. AUBERT reported pain in his left hand." (Bogle Decl. ¶ 6.)

Defendant argues that his use of force was in compliance with regulations prescribing the use of force. Cal. Code Regs., Title 15, § 3268(a)(1) defines reasonable force as "the force that an objective, trained and competent officer, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." Reasonable force can include, but it is not necessarily limited to: verbal orders; physical force; chemical agents; immobilization devices; handheld batons; less-lethal weapons or firearms. Cal. Code Regs., Title 15, § 3268(a)(6).

The Court finds that Defendant has met his burden on summary judgment. Elijah's declaration establishes that he verbally instructed Plaintiff to turn around to be placed in handcuffs and that as he was reaching for Plaintiff in order to place him in handcuffs, Plaintiff began swinging his fist, punching Elijah in the left eye. Elijah's response was defensive, and his declaration establishes that the severity of the response was tempered. Although Plaintiff reached for Elijah's weapons, Elijah chose not to use the weapons on Plaintiff. Elijah's declaration establishes that enough force was used to place Plaintiff in a prone position, where he could be restrained with handcuffs. Elijah's declaration clearly establishes that he did not initiate the use of force, and that he was only responding in a good faith effort to restore discipline and order. Hudson, 503 U.S. at 7. Further, the declaration of MTA Bogle establishes that Plaintiff's

7

injuries were consistent with Elijah's defensive actions.

## VI. Plaintiff's Opposition

The burden shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact as to whether the force used on Plaintiff by Elijah was applied in a good faith effort to maintain order and restore discipline or sadistically and maliciously for the purpose of causing harm. Plaintiff supports his opposition with his own declaration, made under penalty of perjury.

Plaintiff declares that on January 18, 2007, he was returning to his assigned housing unit from the exercise yard. C/O Garcia was conducting routine body searches. (Aubert Decl. ¶ 3.) Garcia confiscated Plaintiff's boxer shorts. Plaintiff asked him why he did so, and Garcia responded "I have the power to do so." Plaintiff stated that "yes you do hold the power to take anything from me if I'm in violation of any rules outlined in the C.D.C. Title 15." (Id.) Plaintiff declares that Garcia "never stated what was altered about the shorts." (Aubert Decl. ¶ 4.)

In response, Garcia "became agitated and visibly upset as he yelled pointing his finger directly in my face, as he said 'If you have a problem with the way I run things then by all means, please write a punk ass no good 602." Plaintiff replied: "now that sounds like a great idea." (Id.) Plaintiff was then ordered into the rotunda in order to isolate him from other inmates. C/O Garcia then began a "verbal assault" on Plaintiff. (Id.) Plaintiff responded by stating "I love my mother and there's nothing you can say or do to take me out of character in defense of my beautiful black mother [sic]. I believe she'll be more proud of me for being the bigger man and not letting your words provoke me knowing your ugly words can't hurt her." (Aubert Decl. ¶ 6.) Defendant Elijah then "quickly ordered defendant Garcia to 'just kick his ass and do what you want with him so I can kick him out of my building with his smart ass mouth.'" (Id.) Plaintiff alleges that the following occurred:

> I immediately requested the presence of a Lieutenant stating 'you just put my life in danger by threating [sic] to cause me bodily harm.' Defendant Elijah, immediately, and without provocation, advanced on my person and snatched me by the neck with his hand and started choking me. Defendant Garcia, Defendant Elijah, and other correctional officers then began to strike me with closed fists

8

> on my face, head, and back.  My hair was pulled out and my
> fingers violently twisted, I was kicked several times and I never
> stood a chance to defend myself against such an assault by
> numerous individuals Defendants Elijah and Garcia.

(Aubert Decl. ¶ 7.)

The Court finds that Plaintiff's declaration, taken as true, establishes that Defendant Elijah, in response to verbal conduct of Plaintiff, choked Plaintiff, striking him with closed fists on Plaintiff's face, head and neck.  Plaintiff specifically declares that Defendant Elijah's physical response was unprovoked.  As noted above, the evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).   Simply put, Defendant Elijah presents evidence that his use of force was in response to Plaintiff's initial use of force.  Plaintiff presents evidence that Elijah's use of physical force was unprovoked.  There is a question of fact as to who initiated the use of physical force.   The Court finds that Plaintiff has met his burden of coming forward with a triable issue of fact regarding whether Elijah's use of force was sadistic and malicious, or applied in a good faith effort to restore order and discipline.

**VII.   Qualified Immunity**

Defendant Elijah further argues that he is entitled to qualified immunity from suit. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " Saucier v.Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), overruled on other grounds by Pearson v. Callahan,555 U.S.223, 233 (2009)).  In applying the two-part qualified immunity analysis, it must be determined whether, "taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation." McSherry v.City of Long Beach,

9

1  560 F.3d 1125, 1129-30 (9th Cir.2009).  These prongs need not be addressed by the Court in any
2  particular order.  Pearson, 555 S.Ct. at 233.  "The relevant, dispositive inquiry . . . is whether it
3  would be clear to a reasonable officer that his conduct was unlawful "in the situation he
4  confronted."  Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010) .

5        Defendant Elijah argues that he is entitled to qualified immunity, as no correctional
6  officer would reasonably believe that halting an inmate's sudden, violent attack by use of
7  physical force, after the inmate was hostile and unresponsive to verbal orders, violated a clearly
8  established right of that inmate.   Defendant's argument, however, turns on the fact that Plaintiff
9  initiated a physical attack.  Plaintiff's declaration establishes that, although he may have been
10 unresponsive to orders, his response was verbal.  Plaintiff's declaration clearly establishes that
11 the physical response by C/O Elijah was unprovoked.  In determining whether summary
12 judgment is appropriate, we must view the evidence in the light most favorable to the non-
13 moving party.  Huppert v. City of Pittsburg, 574 F.3d 696, 701 (9th Cir. 2009).  The Court finds
14 that a correctional officer would reasonably believe that responding to an inmate's verbal
15 conduct by choking him and striking his face and head area with closed fists violates a clearly
16 established right.   Defendant Elijah is therefore not entitled to qualified immunity.

17       Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary
18 judgment be denied.

19       These findings and recommendations are submitted to the United States District Judge
20 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days
21 after being served with these findings and recommendations, any party may file written
22 objections with the court and serve a copy on all parties.  Such a document should be captioned
23 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
24 shall be served and filed within ten days after service of the objections.   The parties are advised
25 that failure to file objections within the specified time waives all objections to the judge's
26 findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
27
28       10

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **May 11, 2011**              /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE