1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT FOR THE
8              EASTERN DISTRICT OF CALIFORNIA
9
10   ESS'N A. AUBERT,                    )    NO. 1:07-cv-01629 LJO-GSA-PC
                                         )
11               Plaintiff,              )    FINDINGS AND
                                         )    RECOMMENDATIONS RE
12        v.                             )    DEFENDANT ELIJAH'S MOTION
                                         )    FOR SUMMARY JUDGMENT
13   KEVIN ELIJAH, et al.,               )
                                         )    (ECF No. 61)
14               Defendants.             )
     _____ )    OBJECTIONS DUE IN TWENTY
15                                            DAYS
16
17
18        Plaintiff is a state prisoner proceeding pro se in this civil rights action.  The matter was

19   referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

20   302.  Pending before the Court is Defendant Garcia's motion for summary judgment.  Plaintiff

     has opposed the motion.
21
     I.   **Procedural History**
22
          This action proceeds on the complaint filed by Plaintiff on November 8, 2007.  Plaintiff
23
     sets forth claims of cruel and unusual punishment in violation of the Eighth Amendment.  The
24
     events at issue occurred at Kern Valley State Prison.  Plaintiff names as defendants the following
25
     individuals employed by the California Department of Corrections and Rehabilitation at Kern
26
     Valley State Prison: Warden Hedgpeth; Correctional Officer (C/O) Kevin Elijah; C/O Mario
27
     Garcia.
28

1    On May 7, 2009, an order was entered, advising Plaintiff that the complaint stated an

2    Eighth Amendment claim against Defendants Garcia and Elijah for excessive force.  Plaintiff

3    failed to state a claim against Defendant Hedgpeth.  Plaintiff was provided the opportunity to file

4    an amended complaint to cure the deficiencies identified as to Defendant Hedgpeth.  On May 14,

5    2009, Plaintiff filed a notice, advising the Court of his willingness to proceed against Defendants

6    Elijah and Garcia.  Accordingly, on June 1, 2009, findings and recommendations were entered,

7    recommending that this action proceed against Defendants Elijah and Garcia on Plaintiff's

8    excessive force claim, and that Defendant Hedgpeth be dismissed.  On July 31, 2009, an order

9    was entered by the District Court, adopting the findings and recommendations and dismissing

10   Defendant Hedgpeth.

11    The complaint was served, and on October 16, 2009, Defendant Elijah filed an answer.

12   Defendant Elijah filed a motion for summary judgment that was denied by order of July 14,

13   2011.  On October 7, 2009, service was returned unexecuted as to Defendant Garcia.  Defendant

14   Garcia was re-served , and on December 21, 2010, filed an answer.   On March 15, 2012,

15   Defendant Garcia filed the motion for summary judgment that is before the Court.  Plaintiff has

16   opposed the motion.  Defendant Garcia has filed a reply.[1]

17   **II.**    **Summary of Complaint**

18    Plaintiff's complaint arises from a routine body search conducted as Plaintiff returned

19   from the exercise unit to his assigned housing at Kern Valley State Prison on January 18, 2007.

20   After searching Plaintiff, Defendant Garcia confiscated Plaintiff's state-issued boxer shorts.

21   When Plaintiff requested justification, Garcia replied, "I have the power to."  Plaintiff and Garcia

22   then engaged in a brief verbal interchange, ending with several guards, including Defendants

23   Garcia and Elijah, isolating Plaintiff in the rotunda in front of the B section day room.  There,

24

25

26    [1]On June 17, 2009, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v.
Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 15.)
The order was re-served on Plaintiff on August 23, 2012, in response to the Ninth Circuit's decision in Woods v.

27   Carey, 684 F.3d 934 (9th Cir. 2012) (ECF No. 72).

28                                                              2

Garcia verbally attacked Plaintiff, calling Plaintiff's mother a "bitch" and a "whore."  After

Plaintiff responded that he loved his mother, who would be proud of him for maintaining his

self-control despite the attempt to provoke him, Elijah ordered Garcia to "just kick his ass and do

what you want with him so I can kick him out of my building with his smart ass mouth."

Plaintiff asked that a Lieutenant be called, protesting that Elijah's order endangered his life.

Elijah then began to choke Plaintiff, initiating a beating by Elijah, Garcia and other unnamed

correctional officers.

III.    **Summary Judgment**

      Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

      If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the denials of its

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the governing

law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.

1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v.

1   Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

2         In the endeavor to establish the existence of a factual dispute, the opposing party need not

3   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5   trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the

6   "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

7   whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

8   56(e) advisory committee's note on 1963 amendments).

9         In resolving the summary judgment motion, the court examines the pleadings,

10  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

12  255, and all reasonable inferences that may be drawn from the facts placed before the court must

13  be drawn in favor of the opposing party,  Matsushita, 475 U.S. at 587 (citing United States v.

14  Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn

15  out of the air, and it is the opposing party's obligation to produce a factual predicate from which

16  the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

17  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

18        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

20  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

21  issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22  **IV.   Excessive Force**

23        The Eighth Amendment prohibits those who operate our prisons from using "excessive

24  physical force against inmates." Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682

25  F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to

26  protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th

27

28                                       4

1  Cir.1988), cert. denied, 490 U.S. 1012 (1989) "Being violently assaulted in prison is simply not

2  'part of the penalty that criminal offenders pay for their offenses against society.'" <u>Farmer</u>, 511

3  U.S. at 834.

4       Whenever prison officials are accused of using excessive physical force in violation of

5  the Eighth Amendment prohibition against cruel and unusual punishment, the core judicial

6  inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or

7  maliciously and sadistically to cause harm. <u>Hudson v.McMillian</u>, 503 U.S. 1, 6-7 (1992) Force

8  does not amount to a constitutional violation if it is applied in a good faith effort to restore

9  discipline and order and not "maliciously and sadistically for the very purpose of causing harm."

10  <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986); <u>Clement v. Gomez</u>, 298 F.3d 898, 903 (9th Cir.

11  2002). Under the Eighth Amendment, the court looks for malicious and sadistic force, not merely

12  objectively unreasonable force. <u>Clement v. Gomez</u>, 298 F.3d at 903.

13       In determining whether the constitutional line has been crossed, the Court may consider

14  such factors as the need for the application of force, the relationship between the need and the

15  amount of force that was used, the extent of injury inflicted, the threat reasonably perceived by

16  the responsible officials and any efforts made to temper the severity of a forceful response.

17  <u>Hudson</u>, 503 U.S. at 7.  Prison administrators should be accorded wide-ranging deference in the

18  adoption and execution of policies and practices that in their judgment are needed to preserve

19  internal order and discipline and to maintain institutional security.  <u>Whitley</u>, 475 U.S. at 322.

20  **V.**    <u>**Defendant's Evidence**</u>

21       Defendant supports his motion with his own declaration and the declaration of A. Bogle,

22  a Medical Technical Assistant (MTA) employed by the CDCR at Kern Valley State Prison.

23  Regarding the events at issue, Garcia declares the following.

24          On January 18, 2007 at approximately 1:30 p.m., I was working as
        a floor officer during recreation yard recall.  Inmates from "B"

25          facility were undergoing routine searches as they came in from the
        yard prior to returning to their cells.  I advised inmate ESS'NN

26          AUBERT, V-77688, that his state-issued boxer shorts were being
        confiscated because they had been altered.  Cal. Code Regs., Title

27

28                                     5

15 § 3032(a) provides that "[i]nmates shall not alter ... state-issued clothing or linen in any manner without specific authority to do so." When an officer confiscates unauthorized but legal items, the inmate is given a receipt and he is allowed to send the items home or donate them.

AUBERT did not argue that his shorts had been altered. Instead, AUBERT became verbally disrespectful and argumentative, stating to me, words to the effect of: "Fuck that homie. Those are my shorts." I informed AUBERT that he would receive a receipt for the altered boxers. AUBERT stated, in a loud and hostile voice in front of several inmates, "Naw, fuck that homie. These are my boxers, you can't take them. I brought them from Ad-Seg."

Cal. Code Regs., Title 15 § 3004(b) provides that "[i]nmates ... will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence." I attempted to deescalate the situation by asking AUBERT to step out into the rotunda. AUBERT complied, and Officer Elijah went along to provide backup, since AUBERT was becoming increasingly hostile.

AUBERT remained unreceptive to my attempts to verbally counsel him regarding his behavior. Officer Elijah then explained to AUBERT that due to his disrespectful attitude and agitated behavior, he would be moving him to another building. AUBERT responded in a hostile tone, "Fuck you, move me out." Officer Elijah instructed AUBERT to turn around so that he could be placed in restraints, but AUBERT did not comply. Officer Elijah gave a second verbal order to AUBERT to turn around, which AUBERT failed to obey. As Officer Elijah was reaching for AUBERT's hand, AUBERT suddenly began swinging his fists, punching Officer Elijah in the left eye.

Because I perceived that a serious injury could be inflicted by AUBERT, I immediately responded by attempting to grab AUBERT's shoulders with both hands, but was unable to restrain him. AUBERT then turned towards me and hit me multiple times in the chest and shoulder with closed fists. As Officer Elijah struggled with AUBERT, I was able to force AUBERT to the ground in a prone position with my body weight. Once AUBERT was on the floor, I ordered AUBERT to stop fighting and cuff up, but he was unreceptive to my orders and continued kicking and swinging his arms with closed fists. Although AUBERT continued to resists, Officer Elijah and I were able to place him in handcuffs. I do not recall seeing any other officers in the rotunda during this incident. Officer Elijah and I helped AUBERT to his feet and escorted him to the front of the building where Officers D. Williams and J. Spurgeon took over the escort. Attached hereto as Exhibit "A" is a true and correct copy of the Incident Report I prepared following this incident with AUBERT. This document

6

1

2

3

4

5

6

7

8

9

10

11

12

13

was prepared as part of my regular duties as an employee with CDCR.  My first name and years of service have been redacted.  I do not know who underlined my report.  The report was not underlined when I turned it into my supervisor.

As a result of the incident with AUBERT, I sustained pain in my left hand and right elbow, but my injuries were minor.  I observed that Officer Elijah sustained a black eye and injuries to his right hand and forearm as the result of the incident.

At no time on January 18, 2007 did I insult AUBERT or make any derogatory remarks about AUBERT's mother.  At no time did I threaten AUBERT with bodily harm, nor did Officer Elijah order me to "kick [AUBERT's] ass."  At no time did I hear AUBERT request the presence of a lieutenant or state that he felt his life was in danger.

On January 18, 2007, I used no more force than necessary and reasonable to subdue AUBERT's attack so that security could be restored.  When my verbal orders were ignored, and after AUBERT began swinging his fists, I need to use physical force to restore discipline.  I acted in good faith to restore order, and not for the purpose of causing AUBERT harm.  At no time did I use force maliciously or sadistically.

14  (Garcia Decl. ¶¶ 3-10.)   The declaration of A. Bogle, the MTA who saw Plaintiff, indicates that

15  Plaintiff had "superficial injuries to his face and shoulder, including abrasions and bruising. The

16  back of AUBERT'S neck appeared bruised, and there were abrasions on the back of his left

17  elbow, but no bleeding, cuts, or swelling. AUBERT reported pain in his left hand."  (Bogle Decl.

18  ¶ 6.)  Bogle ordered x-rays and cleared Plaintiff to return to his housing unit (Id. ¶ 7).

19          Defendant argues that his use of force was in compliance with regulations prescribing the

20  use of force.  Cal. Code Regs., Title 15, § 3268(a)(1)  defines reasonable force as "the force that

21  an objective, trained and competent officer, faced with similar facts and circumstances, would

22  consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or

23  gain compliance with a lawful order."  Reasonable force can include, but it is not necessarily

24  limited to: verbal orders; physical force; chemical agents; immobilization devices; handheld

25  batons; less-lethal weapons or firearms.  Cal. Code Regs., Title 15, § 3268(a)(6).

26          The Court finds that Defendant has met his burden on summary judgment.  Garcia's

27

28                                          7

1  declaration establishes that Plaintiff was ordered to turn around to be placed in handcuffs and

2  that as Elijah was reaching for Plaintiff in order to place him in handcuffs, Plaintiff began

3  swinging his fist, punching Elijah in the left eye.  Garcia's declaration also establishes that as he

4  was attempting to restrain Plaintiff, Plaintiff struck Garcia multiple times with closed firsts.

5  Garcia's response was defensive, and his declaration establishes that the severity of the response

6  was tempered.  Garcia's declaration establishes that enough force was used to place Plaintiff in a

7  prone position, where he could be restrained with handcuffs.   Garcia's declaration clearly

8  establishes that he did not initiate the use of force, and that he was only responding in a good

9  faith effort to restore discipline and order.  Hudson, 503 U.S. at 7.  Further, the declaration of

10  MTA Bogle establishes that Plaintiff's injuries were consistent with Garcia's defensive actions.

11  **VI.   <u>Plaintiff's Opposition</u>**

12         The burden shifts to Plaintiff to come forward with evidence that establishes a triable

13  issue of fact as to whether the force used on Plaintiff by Garcia was applied in a good faith effort

14  to maintain order and restore discipline or sadistically and maliciously for the purpose of causing

15  harm.  Plaintiff supports his opposition with his own declaration, made under penalty of perjury.

16         Plaintiff declares that on January 18, 2007, he was returning to his assigned housing unit

17  from the exercise yard.  C/O Garcia was conducting routine body searches.  (Aubert Decl. ¶ 3.)

18  Garcia confiscated Plaintiff's boxer shorts.  Plaintiff asked him why he did so, and Garcia

19  responded "I have the power to do so."  Plaintiff stated that "yes you do hold the power to take

20  anything from me if I'm in violation of any rules outlined in the C.D.C. Title 15." (<u>Id.</u>)   Plaintiff

21  declares that Garcia "never stated what was altered about the shorts." (Aubert Decl. ¶ 4.)

22         In response, Garcia "became agitated and visibly upset as he yelled pointing his finger

23  directly in my face, as he said 'If you have a problem with the way I run things then by all means,

24  please write a punk ass no good 602."   Plaintiff replied: "now that sounds like a great idea." (<u>Id.</u>)

25  Plaintiff was then ordered into the rotunda in order to isolate him from other inmates.  C/O

26  Garcia then began a "verbal assault" on Plaintiff.  (<u>Id.</u>)  Plaintiff responded by stating "I love my

27

28                                                          8

mother and there's nothing you can say or do to take me out of character in defense of my

beautiful black mother [sic]. I believe she'll be more proud of me for being the bigger man and

not letting your words provoke me knowing your ugly words can't hurt her." (Aubert Decl. ¶ 6.)

Defendant Elijah then "quickly ordered defendant Garcia to 'just kick his ass and do what you

want with him so I can kick him out of my building with his smart ass mouth.'" (Id.)  Plaintiff

alleges that the following occurred:

> I immediately requested the presence of a Lieutenant stating 'you
> just put my life in danger by threating [sic] to cause me bodily
> harm.'  Defendant Elijah, immediately, and without provocation,
> advanced on my person and snatched me by the neck with his hand
> and started choking me.  Defendant Garcia, Defendant Elijah, and
> other correctional officers then began to strike me with closed fists
> on my face, head, and back.  My hair was pulled out and my
> fingers violently twisted, I was kicked several times and I never
> stood a chance to defend myself against such an assault by
> numerous individuals Defendants Elijah and Garcia.

(Aubert Decl. ¶ 7.)

The Court finds that Plaintiff's declaration, taken as true, establishes that Defendant

Garcia, in response to verbal conduct of Plaintiff, choked Plaintiff, striking him with closed fists

on Plaintiff's face, head and neck.  Plaintiff specifically declares that Defendant Garcia's

physical response was unprovoked.  As noted above, the evidence of the opposing party is to be

believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the

facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S.

at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).   Simply

put, Defendant Garcia presents evidence that his use of force was in response to Plaintiff's initial

use of force.  Plaintiff presents evidence that Garcia's use of physical force was unprovoked.

There is a question of fact as to who initiated the use of physical force.   The Court finds that

Plaintiff has met his burden of coming forward with a triable issue of fact regarding whether

Garcia's use of force was sadistic and malicious, or applied in a good faith effort to restore order

and discipline.

In his reply to Plaintiff's opposition, Defendant argues that Plaintiff's version of events is

1   contradicted by the declaration of C/O Polanco, the control booth officer.  C/O Polanco's

2   declaration establishes that Garcia and Elijah used force in response to a physical attack by

3   Plaintiff, and because Plaintiff failed to comply with verbal orders.  Plaintiff's declaration

4   however, establishes that the use of physical force was exercised in response to verbal conduct.

5   **VII.   Qualified Immunity**

6           Defendant Garcia further argues that he is entitled to qualified immunity from suit.

7   Government officials enjoy qualified immunity from civil damages unless their conduct violates

8   "clearly established statutory or constitutional rights of which a reasonable person would have

9   known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is 'an

10  entitlement not to stand trial or face the other burdens of litigation.' " Saucier v.Katz, 533 U.S.

11  194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), overruled on other

12  grounds by Pearson v. Callahan,555 U.S.223, 233 (2009)).  In applying the two-part qualified

13  immunity analysis, it must be determined whether, "taken in the light most favorable to

14  [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not

15  the right was clearly established at the time of the violation." McSherry v.City of Long Beach,

16  560 F.3d 1125, 1129-30 (9th Cir.2009).  These prongs need not be addressed by the Court in any

17  particular order.  Pearson, 555 S.Ct. at 233.  "The relevant, dispositive inquiry . . . is whether it

18  would be clear to a reasonable officer that his conduct was unlawful "in the situation he

19  confronted." Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010) .

20          Defendant Garcia argues that he is entitled to qualified immunity, as no correctional

21  officer would reasonably believe that halting an inmate's sudden, violent attack by use of

22  physical force, after the inmate was hostile and unresponsive to verbal orders, violated a clearly

23  established right of that inmate.   Defendant's argument, however, turns on the fact that Plaintiff

24  initiated a physical attack.  Plaintiff's declaration establishes that, although he may have been

25  unresponsive to orders, his response was verbal.  Plaintiff's declaration clearly establishes that

26  the physical response by C/O Garcia was unprovoked.  In determining whether summary

27

28                                            10

1    judgment is appropriate, we must view the evidence in the light most favorable to the non-

2    moving party.  Huppert v. City of Pittsburg, 574 F.3d 696, 701 (9th Cir. 2009).  The Court finds

3    that a correctional officer would reasonably believe that responding to an inmate's verbal

4    conduct by choking him and striking his face and head area with closed fists violates a clearly

5    established right.   Defendant Garcia is therefore not entitled to qualified immunity.  The Court

6    must believe Plaintiff's evidence, and draw all reasonable inferences in Plaintiff's favor.   The

7    Court finds that there is a triable issue of fact regarding who initiated the use of physical force.

8    Defendant's motion should therefore be denied.

9         Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary

10   judgment be denied.

11        These findings and recommendations are submitted to the United States District Judge

12   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised

16   that failure to file objections within the specified time waives all objections to the judge's

17   findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file

18   objections within the specified time may waive the right to appeal the District Court's order.

19   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20

21        IT IS SO ORDERED.

22   **Dated:**   **February 28, 2013**              _____/s/ **Gary S. Austin**_____
                                                      UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28                                          11